UNITED STATES DISTRICT COURT
MIDDLE  DISTRICT OF FLORIDA
TAMPA  DIVISION

UNITED STATES OF AMERICA,
                              Plaintiff,

vs.                                                    CASE NO. 06-CR-26-T26-TBM

MICHAEL ZAPETIS,
KAREN CARAZO ZAPETIS
           aka KAREN LEICHT, et al
                              Defendants.
_____/

**Defendants  Zapetis' Reply
to Government's Response to Motion to Dismiss Counts One and Two
As They Are Barred By The Applicable Statutes of Limitations, (Dkt 456)
<u>And Incorporated Memorandum of Law</u>**

        COMES NOW the defendants, MICHAEL E. ZAPETIS  and KAREN CARAZO ZAPETIS to

respectfully reply to the government's response to their joint motion to dismiss the indictment as

barred by the applicable statute of limitations:

**The Applicable Statue of Limitations for Count 1 Alleging a Violation of 18 USC §371 is Five
(5) Years, Not Ten (10) Years, as the Government Urges**

        It should be patently obvious from the face of the indictment, but apparently it bears

emphasizing here, that defendants are not actually charged in this case with a conspiracy to violate 18

USC §1033, as the government urges. Instead,  they are charged by the grand jury with a violation of

the general conspiracy statute of 18 USC §371, which is described in the indictment "Manner and

Means of the Conspiracy" as a consolidated conspiracy having multiple criminal objectives. To be

sure, Count 1 includes among it's criminal objectives an allegation that defendants conspired to

"commit  insurance fraud in violation of Title 18, United States Code, Section 1033( c)( 1 )."

However, Count 1 also alleges that defendants concurrently and coterminously conspired to commit

mail fraud AND wire fraud in violation of 18 USC §§ 1341 and 1343, and the entire factual basis for

the general conspiracy alleged in Count 1 is presented in a consolidated fashion.[1]  Nowhere is the

factual narrative of the "Manner and Means of the Conspiracy" delineated to distinguish any factual

bases or necessary elements of a conspiracy to commit insurance fraud objective from any such facts

or elements required for proof of the other 2 objectives which carry  five (5) year limitations periods.

Count 1 of  the indictment summarizes the charge against  defendants as follows:   **All in**

**violation of Title 18, United States Code, Section 371."** [ Dkt  1, at 21 ¶ A(57)] By *All,* the grand

jury presumably actually meant "*all*," and they meant to encompass the entirety of the preceding

factual basis of the conspiracy and all its consolidated objects. The Court may not construe the

indictment in ways different than the  grand jury indicted. Stirone v. United States, 361 U.S. 212,

215-16(1960). The conspiracy charged here  encompasses an agreement to commit a crime through 3

different "means." A 10 year limitations period might have been applicable to an  insurance fraud

conspiracy Count if one had been charged as an  independent Count, solely as a violation of 18 USC

§1033( c)(1), but here, based on the government's drafting of this indictment, it is not.

The alleged agreement itself is the prohibited conduct targeted by the conspiracy statute, and

there is only one offense where there is only one agreement. The insurance fraud objective does not

represent a distinct and separate agreement from the otherwise consolidated conspiracy agreement.

That argument must admit the duplicitous nature of Count 1 as charged for reasons different from, but

just as compelling, as those argued in defendants' Motion to Dismiss Count 1 for Duplicity. (Dkt 422)

But in the government's resistance to the Zapetis' Motion to Dismiss Count 1 on "duplicity" grounds

they contend that it is not duplicitous to charge in one Count multiple means of committing the *same*

*offense.* Id. at p.3.  Here the "same offense" is the one §371 conspiracy, which must carry the least

---

[1] There appears to be no dispute in the Response that the applicable statute of limitations
for the other 2 conspiratorial objectives as charged in consolidated fashion in Count 1 is 5 years,
pursuant to 18 USC §3282(a).

burdensome limitations period from among the several conspiratorial objectives or means charged.

Though rarely confronted with this issue, courts have held that where there is ambiguity about the statute of limitations due to a charged conspiracy whose objectives include multiple crimes with different statutes of limitations,  the government simply can not be allowed to have their "single conspiracy" and their longer statute of limitations too, based solely on the poor quality of their indictment drafting. The fact that the different conspiratorial objectives in Count 1 may have different statutes of limitations is of no bearing on the statute of limitations for the overall charged conspiracy itself. See, e.g. U.S. v. Johnson, 239 F.Supp.2d 897(ND.IA 2002) [Government agrees that conspiracy to interfere with witnesses to conceal drug trafficking, as opposed to the interference itself, was single conspiracy with five year statute of limitations, even if the offenses charged as objectives of that conspiracy involved murder of individual witnesses or attempts to intimidate or solicit murder of individual witnesses, which individual capital crimes have no statutes of limitation.]; and "In a multiple-object conspiracy where the object crimes bring into play differing statutes of limitations, the proper course may be to apply the rule of lenity in construing the statutes and apply the shorter limitations period to the entire conspiracy." U.S. v. Head, 641 F.2d 174, 178 (4th Cir. 1981) cert. denied, 462 U.S. 1132, 103 S.Ct. 3113, 77 L.Ed.2d 1367 (1983) [Declining to find a  "hybrid" statute of limitations appropriate in a single conspiracy count of multiple objectives with different statute of limitations.] In Head, the Court applied the rule of lenity when a single conspiracy count charged the defendant with a conspiracy to commit several different offenses with different statutes of limitations.

**This Indictment Violates the Applicable Five (5) Year Statute of Limitations**
**The "lulling letters" can not save the indictment from a statute of limitations bar.**

The government responds that even if the 5 year limitations period applies, the date of the Broughton "lulling letters" alleged in the indictment marks the accrual date of the Count 1 conspiracy

and, despite the 2 tolling Orders they sought prior to indictment, they now claim the tolling Orders were superfluous and unnecessary. (Dkt 456, p. 3-7) They can not rely on the Broughton evidence retroactively to establish timeliness because the statute of limitations had already expired for the only defined offense under investigation by a grand jury in the MDFL, to wit,  the WVE/Global/Star-centered conspiracy. That scheme, as defined by the government for the Court in the 1ˢᵗ tolling motion, did not allege any continuing conspiracy offense, nor did it include any facts at all about Broughton, FCCA/Synergy or these "lulling letters".[2]  The latest overt act of the  scheme before the court in the ILR is December 1998. (Dkt. 370-1( c) p. 10) Even if the Broughton letters are "lulling letters" under U.S. v. Evans, 473 F3d 1115 (11th Cir. 2006), they certainly are not "lulling letters" associated in any way with concealing or continuing that WVE/Global/Star offense for which the foreign evidence was sought from Costa Rica or Panama. They are wholly unconnected to that conspiracy and that offense, and they are unconnected to the broader conspiracy alleged against the Zapetis' in the indictment, as argued in our motion at Dkt. 415.

The Broughton letters, *which were never before the Court at the time of the 1ˢᵗ  tolling* in July 2003, can not be used retroactively, to revive the expired WVE-centered offense upon which tolling was based and then expand it, simply because of a  mention of it in the 2d tolling request of August 2004. In the August 2004 application the Broughton-centered scheme were mentioned not in order to seek additional time to obtain foreign evidence in relation to that scheme, and not to seek foreign evidence related to the letters, but only to create the chimera of an entirely different offense, to

_____

[2] We argue these matters were not included because they were not under investigation by the grand jury in the MDFL and would have failed the "venue component" of §3292 if they were. See,  U. S. v. DeGeorge, 219 F3d 930, 940 (9th Cir.2000) [Approving district court's interpretation of ambiguous §3292 as Congress' intent to interpose a "grand jury venue requirement" with respect to the scope of the "offense under investigation" and to limit which court could issue the order suspending the statute of limitations.]

graft on to the WVE-centered scheme for which there was "tolling venue," the Broughton-centered

scheme for which the statute of limitations had not yet expired. But that is improper, as the only

offense for which tolling was sought and approved by the Court had already expired by then, and it

could not be revived by consolidating these 2 schemes. U.S. v. Kozeny, 541 F.3d 166(2d Cir. 2008).

 Their Response suggesting that the indictment is timely merely because this overt act appears

in the indictment completely ignores this procedural history of this case. It ignores what we believe

the facts show-- that the government already had the Broughton letters when they first sought tolling

in July 2003, but withheld that information from the Court because there was no venue for that

scheme in the MDFL grand jury. It ignores the statutory requirement that tolling must be limited by

the date and particular terms of the request for foreign evidence, which did not ever include anything

related to that Broughton objective. See, e.g U.S. v Neill, 952 F.Supp. 831 (D.D.C. 1996)  It ignores

the opportunity for abuse and manipulation of §3292 that exists by not requiring the government to

mark the statute of limitations for the offense under investigation at the time tolling is sought.[3]

 Courts must look closely at the relationship between the offense presented, the offense under

investigation by the grand jury at the time of tolling,  and the offense ultimately charged. **"[T]he**

**statute [§3292] does not grant the government *carte blanche* to toll statutes of limitations.** The

first major constraint upon government discretion is the clear requirement that an offense be under

investigation by a grand jury." The statute governing suspension is offense-specific and "the request

for evidence must. . . be reasonably specific in order to elicit evidence of the alleged violations under

---

[3]It also means that any particular information presented to the Court in support of a tolling
Order has a limited shelf life–it is only good for as long as it takes the Court to issue the tolling
Order. Afterward, "the offense" as presented to the Court can be modified, expanded or dropped
completely from the grand jury investigation as the government interposes rolling requests for
foreign evidence based on reformulated or different offenses, as they did here, so as to re-frame the
conspiracy and kick the statute of limitations accrual date further down the road. This is improper.

investigation by the grand jury to suspend the statutes of limitations for the offenses charged." U.S. v.

Neill, 952 F. Supp. at 832 -833. The government must also establish by "preponderance of the

evidence" that the evidence sought relates to the offense charged and meets §3292's requirements.

;U.S.v. Trainor, 376 F.3d 1325, 1333 (11th Cir. 2004).

Here, the government has filed a sealed document allegedly bearing on this question but we

can not respond to it if we do not know what it is or purports to prove. We can note however that IF it

establishes that the **MDFL** grand jury had the Broughton-centered scheme under investigation in July

2003, then the 1st tolling request in July 2003 misrepresented the offense under investigation to the

Court. Conversely, if the **MDFL** grand jury did not have that under investigation in July 2003, then

the conspiracy in the indictment which is grounded on it is a completely different offense from the

WVE/Global/Star-centered offense which expired in December 2003, before the 2d tolling request of

August 2004. The Neill court reflected on the plain language of the statute as follows:

> "A district court 'before which a grand jury is impaneled to investigate **the offense**
> shall suspend the running of the statute of limitations for **the offense** if the court finds
> by a preponderance of the evidence that an official request has been made **for such**
> **evidence** and that it reasonably appears or reasonably appeared at the time the request
> was made that **such evidence** is, or was, in such foreign country.' 18 U.S.C. §
> 3292(a)" (emphasis in original). Id.

No official request for foreign evidence was ever requested related to mail, wire or insurance

fraud involving Continental Indemnity or involving Broughton/FCCA/Synergy. No Court was

informed, pre-indictment, that these objectives were under investigation by a MDFL grand jury; or

that foreign evidence requests had been made for any evidence related to these objectives.

> "The government can only request that statutes of limitation be tolled for offenses
> actually under investigation by the grand jury; and such tolling can only be triggered
> through official requests for foreign evidence  that are sufficiently specific" as to the
> offense under investigation.   "[Section 3292] should not be an affirmative benefit to
> prosecutors, suspending the limitations period, pending completion of an investigation,
> whenever evidence is located in a foreign land. It is not a statutory grant of authority to

extend the limitations period by three years at the prosecutors' option."
United States v. Meador, 138 F.3d 986, 994 (5th Cir.1998) .

But the government urges here that they should be allowed to misrepresent "the offense under investigation," misrepresent or withhold what evidence they had or did not have in their presentation to the Court, in order to obtain tolling, and then continue their investigation and case preparation beyond the statute of limitations for the original offense, while they "wait" for specious foreign evidence they do not need and that they know will never come,[4] before seeking an indictment for an entirely different conspiracy altogether. "The district court is responsible for ensuring that the interests of the defendant are protected when the government applies *ex parte* for suspension of the statute of limitations to permit the government to obtain foreign evidence." U.S. v. Trainor, at 1332. The Court can not do that if information is withheld from or misrepresented in their *ex parte* request.

Though it also rarely happens, Courts have been vigilant when confronted with misrepresentations to Court to support a tolling motion.  In U.S. v. Maroun, 699 F.Supp. 5 (D.MA.1988) and United States v. Cosolito, 488 F.Supp. 531 (D.MA.1980),  the prosecutor requested tolling of the statute of limitations predicated upon a need for sealing the indictment. In Maroun, the information presented  was later found to be "without a basis in fact."  Citing Cosolito, in dismissing the indictment, the Maroun Court rhetorically asked, how can a request for tolling of a statute of

---

[4] Such as the "self-authenticating copy" of report they already had which was requested from Panama in the July 2003 MLAT some 3 years before indictment and almost 8 years from trial; or the request for interviews with people whom they already had reason to believe did not exist, from the reports and ongoing communications they had with a Panamanian Credit Union Association investigator and others there from as early as May, 2001(Dkt. 372-17). With these types of specious requests, the government purchased almost 3 more years of investigative time after expiration of the statute of limitations for the WVE-centered conspiracy. The 2d ILR to Costa Rica of August 2003 also provides no grounds for further tolling or ongoing tolling to encompass a broader offense since it contains ***absolutely no new factual basis whatsoever***. (Dkt. 372-8) In that regard, it is a nullity for purposes of tolling analysis.

limitations be submitted to the sound discretion of the Court if the Court is not properly informed?

**The Continental Indemnity objective also can not save this untimely indictment**

Next, to establish timeliness without the Broughton letters, the government responds using the example of the Continental Indemnity ( CI) scheme in order to establish an accrual date for measuring the statute of limitations of Count 1 which will serve their purposes, and to illustrate the time line of any applicable tolling.(Dkt 456, p. 9-10) [5] But just like the Broughton letters, CI was never presented to the tolling Court as a continuation of the WVE/Global/Star-centered scheme detailed in the 1st or 2d ILR, the MLAT, or the 1st tolling motion. *The CI conspiracy objective was never presented  at all,* so it would be impossible for the Court to find that tolling was necessary to acquire foreign evidence related to it prior to expiration of the statute. Again, because the government could not tie them together, only the WVE- centered scheme, and not the CI scheme, could meet the "investigative venue requirement" of a  MDFL grand jury, and, of  proper tolling. DeGeorge, 219 F3d at 940.

In similar contexts, Courts have determined that the statute of limitations commenced running when the risk inherent in the charged scheme was realized, and noted the crime of scheming to defraud. . . was not a continuing offense; once the scheme is executed, the crime has ended, and additional conduct in furtherance of that scheme does not extend the statute of limitations for that particular execution.  See, e.g. U.S. v. Reitmeyer, 356 F.3d 1313 (10th Cir. 2004),["execution" of scheme to defraud government by false pretenses occurred, and the limitations period commenced,

---

[5] Here, the government elects to end the conspiracy and fix the accrual date of the statute of limitations with the Continental Indemnity scheme only "*hypothetically*". (Dkt.456, p.9-10). We are one month from trial on a complex indictment with no bill of particulars and the government still resists committing to any actual date which would fix the conspiracy's statute of limitations or constrain their freedom to vary the indictment to fit the vicissitudes of their proof at trial. Respectfully, the Court should ignore any argument based on such *hypotheticals* and now require the government to commit, in a bill of particulars, to their theory of prosecution.

8

when companies first put the government at financial risk] Conceptually, the same is true for a fraud

conspiracy. Here the crime is a criminal agreement to commit fraud–and the only such agreement

presented to the Court for purposes of tolling under §3292 prior to expiration of the limitations period

was the WVE/Global/Star-centered agreement which ended no later than "December 1998."

For example, in the July 2003 tolling application the government never informed the Court

that the agreement to engage in the fraud scheme under investigation continued beyond December

1998. Their July 2003 ILR  itself also belies such a view.[6]  There was no factual basis at all alleged in

the 2d ILR of August 2003, and the MLAT to Panama also contained no allegations of any expanded

conspiracy. Therefore, this Court must fix a statute of limitations accrual date no later than the time

alleged for the end of the conspiracy *as presented,* for purposes of determining whether tolling was

proper. The ILR suggests that WVE/Global-centered conspiracy was fully executed by December 1998

with the "fraudulent increase of the assets of Star to $380 Million"and/or when the Zapetis' received their

dividend payments for inflation of the Global balance sheets (Dkt. 370-1(c)p.10) With the latest date of the

offense presented to the Court " December 1998"; the applicable statute of limitations would run in

December, 2003, unless a proper tolling under §3292 applies. There was no proper tolling under 18 USC

§3292 for all of the reasons asserted in our motion.

**Even if Tolling Was Proper, The Limitations Period Had Ruan by the Date of the Indictment**

Even if the 1st tolling Order of July 2003 was properly granted, and it was not, the indictment is

untimely because the government was entitled to a maximum 6 month suspension pursuant to §3292( c)(2)

under that Order. As we argue in our Motion to Suppress Foreign Evidence, the U.S. government and the

Costa Rican government were engaged in a "joint venture" for purposes of the recovery of foreign evidence

---

[6] The 1st ILR mentions that "the Zapetis' recently advertised their company SISICOM on the internet" without providing any other information about that company, the advertisement, or whether or how SISICOM was even related to the scheme alleged. That allegation alone can not expand the conspiracy or extend the statute of limitations.

sought pursuant to the 1ˢᵗ ILR. (Dkt. 424) This joint venture was approved by a "judicial authority" in Costa

Rica. As joint venturers, despite the government's incredible protestations to the contrary (Dkt. 452) we can

show the U.S. received "production" of all of the evidence recovered by the Costa Ricans at the same time it

came into the possession of Costa Rican law enforcement on January 22-23, 2003, and that production

constituted "final action" under §3292. The joint venture is explored more thoroughly in our Motion to

Suppress Foreign Evidence. [7]   In  U.S. v. Torres, 318 F.3d 1058 (11th Cir. 2003), final action occurred when

the Costa Rican Judicial authority  gave full authority to the U.S. agents,  pursuant to the joint venture, to

recover the evidence seized and all such other evidence as they saw fit.(Dkt. 424). The statute here would

---

[7] For purposes of tolling analysis the court must also determine when" final action"
occurred. Normally, final action is determined by the certification response of foreign authorities.
See U.S. v. Torres, 318 F.3d 1958 (2003), surveying case law interpreting "final action." But
none of those cases dealt with documents or other business record evidence seized in a *joint
venture* between US authorities and foreign authorities. In such circumstances, as here, the US
controlled it's own access to the evidence by making all of the decisions as to what evidence was
"relevant" and the pace of its availability. That is why Agt. Thomas remained in Costa Rica to
assist with the evidence and, we maintain, he had to have had access to the evidence throughout
that process or else he had no purpose there. Indeed, the government admits as much, and that he
was also permitted to "look at documents" (Dkt. 452, p9), which we submit IS a seizure; and is
also  "production" to the US and therefore "final action" as to all such evidence. Nothing §3292
requires a form of production more formal than is requested by the US, which here requested a
search & seizure. [The bank records request is addressed in our underlying motion. The
government offered no rebuttal to our arguments regarding the bank records.] Also, the
government acknowledges supplying Costa Rica OIJ with an "updated version of forensic
computer imaging software." (Id.p.10) We believe the Court will find the "update" of the
forensic software was actually pre-loaded by the US with relevant search terms and an
investigative matrix developed for this investigation by the US, not by OIJ.  When the program
was run on the computer hard drives, the software located and "seized" all of the "relevant"
records without the exercise of any independent investigative discretion by OIJ, no matter
whether an American or Costa Rican technician hit the "ENTER"button. Since this evidence was
seized at the US' discretion, and not dependent on any "certification" by the foreign authority,
"final action" as defined by §3292 occurred then. Any other finding *in a joint venture context*
allows the US government "to be vested with unlimited discretion to decide when 'final action'
has taken place, and deprives the defendant of the benefits of the limitations period to which he is
statutorily entitled." U.S. v Torres, at 1064.

therefore expire December 2003 [December 1998 +5 years = December 2003]+ 6 months = in May 2004. [8]

Respectfully submitted,

*s/ Sharon Samek*

FL Bar No. 0071511
Sharon Samek, Attorney at Law
8766 Ashworth Drive
Tampa, FL 33647
813-334-7572  Tel
813-991-7967 Fax
sharonsamek@verizon.net
Counsel for Michael E. Zapetis

*s/Rochelle A. Reback*

FL Bar No. 0562645
Rochelle A. Reback, Atty. & Assocs. at Law
405 West Azeele Street
Tampa, FL 33606-2912
813-251-9660  Tel
813-253-3580 Fax
rareback@rebacklaw.com
Counsel for Karen Carazo Zapetis

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing has been furnished to AUSA Rachelle Des Vaux Bedke,and AUSA Laurel Moore, via ECF/CM email at the U.S. Attorney's Office, 400 N. Tampa Street, Ste 3200, Tampa, Florida 33602 on this 1st day of March  2010  by electronically filing it with the email address registered for them with the ECF/CM  system of the U.S. District Court for the Middle District of Florida.

*s/Rochelle A. Reback*
ROCHELLE A. REBACK, ATTORNEY

---

[8]Because the precise date in "December 1998" is critical to the determination of the statute of limitations accrual date, and the defense related thereto, and because that date has not been disclosed in a bill of particulars, we reserve the right to supplement this motion with those facts when such particularized  disclosure is made. Further, several issues related to the application of any tolling period under these circumstances, such as whether the actual "offense under investigation" must be disclosed to the Court, and whether "final action" is effected by a joint venture, are questions of first impression. We therefore respectfully request an opportunity to develop facts on these issues at an evidentiary hearing.